**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHELLE WILLIAMS,        )
                                        )
             Plaintiff,         )         Case No. 12-cv-8400
                                          )
       v.                    )         Judge Robert M. Dow, Jr.
                                          )
DEPARTMENT OF VETERANS       )
AFFAIRS, ROBERT A. McDONALD,   )
in his official capacity as Secretary of   )
Veterans Affairs only,[1]            )
                                          )
           Defendant.      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Michelle Williams, in her suit against the Department of Veterans Affairs, through its Secretary Robert A. McDonald in his official capacity only ("Defendant"), claims that she was subjected to a hostile work environment and retaliation on the basis of age, gender, and race while employed as a Program Support Supervisor at Jesse Brown VA Medical Center ("Jesse Brown"). Before the Court is Defendant's motion for summary judgment [47]. For the reasons stated below, Defendant's motion [47] is granted.

## I.    Background

### A.    The Parties' Statements of Facts

The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements: (1) Defendant's L.R. 56.1 Statement of Material Facts in Support of Defendant's Motion for Summary Judgment [49]; and (2) Plaintiff's Local Rule 56.1 Statement of Material Facts In Support of Plaintiff's Answer to Defendant's Motion for Summary Judgment [57].

---

[1] Robert A. McDonald was confirmed as Secretary of the Department of Veterans Affairs on July 29, 2014, and is therefore automatically substituted for Eric K. Shinseki as Defendant. See Fed. R. Civ. P. 25(d).

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law.  Defendant has complied with this rule [49].  The rule also requires the nonmovant (here, Plaintiff) to file (1) a concise response to a movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials"; and (2) a statement (if any) of additional facts that require the denial of summary judgment.  L.R. 56.1(b)(3)(A).  Plaintiff has not complied with these requirements. Although the paragraph numbering in Plaintiff's L.R. 56.1 Statement largely follows the paragraph numbering used in Defendant's L.R. 56.1 Statement, Plaintiff does not specifically admit or deny the facts set forth by the Defendant.  Instead, where she is in agreement with Defendant's version of the facts, Plaintiff repeats or paraphrases Defendant's LR 56.1 statement. Where she disagrees with Defendant's version of the facts, Plaintiff either ignores those facts or provides different and/or additional facts.  It is improper for a party to add new facts in this manner in its response to a party's L.R. 56.1 statement of fact; new facts should be set out in a separate statement of additional facts, to which the Defendant would have an opportunity to respond.  See, *e.g.*, *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

Nonetheless, because Plaintiff appears to have tried to comply with L.R. 56.1, the Court will exercise its discretion in the direction of leniency and consider those responses and additional fact statements that arguably meet the requirements of the local and federal rules. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (making clear that, although district courts have discretion to require strict compliance with Rule 56.1, "[i]t does not follow * * * that district courts cannot exercise their discretion in a more lenient direction: litigants have no right to demand strict enforcement of local rules by district judges").

With that said, it is the Court's duty to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement. See, *e.g., Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004). Merely including facts in a responsive memorandum is insufficient to put issues before the Court. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995); *Malec*, 191 F.R.D. 581, 594 (N.D. Ill. 2000). The Court's scrutiny of material statements of facts applies equally to the party seeking summary judgment and the party opposing it.

In addition, Local Rule 56.1 requires factual allegations in the statements of fact to be supported by admissible record evidence. See L.R. 56.1; *Malec*, 191 F.R.D. at 583-85. Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. *Id.* Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Thus, any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by citation to evidence in the record will not be considered by the Court in ruling on the summary judgment motions. In the following discussion of the facts, the Court notes several instances in which

legal conclusions have been advanced and statements of fact were not properly supported by the record.

**B.      Facts**

Plaintiff is an African American woman over the age of forty.  Plaintiff began working at Jesse Brown in 1982 as a typist.  She held various clerical positions until 2004, when she became a Program Support Supervisor with the mental health service line, the unit that provides mental health services to VA patients at Jesse Brown.  Plaintiff was responsible for supervising a staff of approximately 13 to 17 clerks, monitoring appointment cancellations and rescheduling, attending meetings and preparing reports on patient activity, coordinating staff caseloads, and performing related administrative tasks.  The pay grade for Program Support Supervisor at that time was GS-7 on the General Service Administration pay scale for federal employees.

Plaintiff asserts in her response brief ([54] at 5) and L.R. 56.1 Statement ([57] at 3) that in 2004 she was promised a pay grade increase by her supervising administrative officer, Devora Garrett.  Specifically, Plaintiff asserts that "Devora Garrett rewrote the job description" for Program Support Supervisor, "which included additional duties"; that Garrett "discussed" the "new job description" with Plaintiff; and that Garrett "presented [the job description] to Paul Johnson and Dr. Nand for signatures to upgrade the Position to GS-9 on the general service administration pay scale for federal employees."  [57] at 3.  Plaintiff does not cite to any deposition testimony or affidavits to support these facts, but does submit a document titled "Position Description" for "Supervisor, MJSL Administrative Support Unit," dated June 24, 2004 and signed by Garrett and "Paul Johnson, Business Manager" that shows the position classified at the GS-9 pay grade.

Jesse Brown's Human Resources ("HR") department is required to review and approve requests for an increase in pay grade. Garrett left her position as administrative officer before she sent HR the documentation necessary to process the request for a pay grade increase. In February 2005, Rick Kallao became the administrative officer for Jesse Brown and Plaintiff's first-line supervisor. Plaintiff and Kallao had a good working relationship until late 2008 or early 2009. During this period, Kallao gave Plaintiff annual reviews. The performance reviews that Plaintiff has provided to the Court ([54-1] at 7-14) show that for the period covering October 2005 to September 2006, Plaintiff was rated "Outstanding," which is the highest rating available. For the period covering October 2007 to September 2008, he rated her performance "Excellent," which is the second-to-highest rating available.

According to Plaintiff's response brief—which cites but does not attach Plaintiff's deposition transcript—Plaintiff "was approached by a co-worker with a copy of the documentation for the promotion that she was promised on June 18, 2004." [57] at 4.[2] "[P]laintiff approached Rick Kallao and asked him why he failed to forward the documentation to Human Relations. He stated that he lost it. [Plaintiff] then gave him a copy and asked him to submit it. Weeks passed and the documentation was not submitted. [Plaintiff] approached * * * Kallao on several occasions and he failed to submit the documentation. [Plaintiff] then went to Dr. Fore[,] Kallao's superior[,] for assistance." *Id.* "Kallao wrote a job description and submitted it to Dr. Fore and to Human Resources." *Id.* (citing Fore declaration, [49-1] at 28). Dr. Fore and Kallao began working with HR to determine whether the position could be re-graded to a higher pay scale. [49-1] at 28.

---

[2] There is nothing in the record addressing whether Plaintiff ever approached Kallao to follow up on the request for a pay grade increase at any time prior to the co-worker's apparent discovery of the documentation.

According to Plaintiff's L.R. 56.1 Statement, after Plaintiff talked to Dr. Fore, Kallao "proceeded to threaten [Plaintiff] by stating you are going to regret going to Dr. Fore. * * * Kallao then began to harass [Plaintiff] by interfering with her supervisory duties and over ruling any decisions that she made in front of the clerks that she supervised." [57] at 5. Plaintiff's Statement does not cite to anything in the record to support this statement, but Plaintiff does submit an affidavit and a declaration from her co-workers concerning Kallao's alleged harassment. Patricia Gardner, a clerk supervised by Plaintiff, stated in her affidavit that she "witnessed verbal and mental abuse on many occasions to Michelle Williams by Rick Kallao." [54-1] at 29. When Plaintiff tried to supervise Rollins, Kallao "would undermine her." *Id.* Kallao "was so bad that the staff collectively wrote a letter to the Associate Director requesting that Rick Kallao be removed." *Id.* Gardner "personally filed an EEOC complaint against Rick Kallao" and "[t]he agency was found to have discriminated against [her]." *Id.* Gardner does not identify her age or race or explain the factual basis for the letter, the EEOC complaint, or the agency decision that are referenced in her affidavit.

In her declaration, Bernadine Madison, a clerk supervised by Plaintiff, stated that in 2009 Kallao "became very hostile and verbally abusive" to Plaintiff. [54-1] at 31-32. She observed Kallao "constantly micro-managing and disputing everything that [Plaintiff] tried to do as the Supervisor of the clerks." *Id.* She observed Kallao glaring at Plaintiff, yelling and raising his voice to Plaintiff, and demanding that she look him in the eye rather than down. *Id.* at 33. In Madison's opinion, Kallao "did not treat the other staff with the lack of respect the way that he did Michelle." *Id.*

In January 2009, around the same time that the events between Plaintiff and Kallao were unfolding, Jesse Brown instituted a new initiative in the mental health unit to better track patient

appointment cancellations. The initiative was intended to address the problem of patients calling to cancel but being unable to reach a live operator, which resulted in "no-show" appointments and missed opportunities to reschedule treatment. Jesse Brown established an independent phone number, the "ACD line," to route patient calls directly to a mental health technician or clerk, who would note the cancellation in the electronic scheduling system and try to reschedule the appointment. Supervisors were required to monitor the responsiveness of clerks to phone calls and the clerks' rate of success in rescheduling appointments. Plaintiff was in charge of supervising the ACD line clerks.

The ACD line program was not initially successful. Three of the clerks under Plaintiff's supervision repeatedly failed to answer calls in a timely fashion. Kallao instructed Plaintiff to meet with these clerks and provide feedback. Defendant asserts, based on an affidavit from Dr. Fore, that Plaintiff refused to meet with the clerks. Plaintiff asserts that she did not refuse to meet with the clerks.

Wanda Rollins was one of the three clerks with whom Kallao instructed Plaintiff to meet. Rollins is an African American woman. Plaintiff states in her brief that Rollins is ten years younger than Plaintiff and has lighter skin; however, there is no evidence in the record supporting these facts. According to Plaintiff, Rollins refused to answer the ACD Hotline and refused to be supervised by Plaintiff. Plaintiff and Rollins had a history of workplace conflicts. Madison observed Rollins refuse to answer the ACD hotline as required and believed that Rollins was trying to force Plaintiff out of the department so Rollins could take her job. [54-1] at 33. Rollins "filed an EEO complaint" against Plaintiff. [49-1] at 29; [57] at 5. Rollins also requested to be transferred to a position with a different supervisor. In February 2009, Rollins

filed a claim with the Office of Workers' Compensation Program ("OWCP") due to job-related stress purportedly caused by her relationship with Plaintiff.

Jesse Brown's HR department requires a "CA-2 form" to be filled out in connection with OWCP claims. The CA-2 form contains basic information on the nature of the claimant's injury and affected job responsibilities. The VA's policy is to submit the form to the Department of Labor within ten days of the OWCP claim. The employee's direct supervisor—in this case, Plaintiff—is responsible for completing and submitting the form. In March 2009, Kallao met with Plaintiff and instructed her to complete Rollins' CA-2 form in a timely fashion. Ultimately, the form was submitted three weeks past the VA's 10-day deadline. Plaintiff asserts that she was unable to complete the form sooner because Rollins had not timely provided her with certain necessary information.

In May 2009, Kallao asked Plaintiff to conduct a mid-year appraisal of Rollins. Defendant, through Dr. Fore's declaration, asserts that Plaintiff refused to conduct the appraisal. Plaintiff states that she did not refuse to conduct the appraisal and provides a June 2, 2009 e-mail in which she refuted Kallao's statement that she had refused to conduct the appraisal. Plaintiff explains that she did not meet with Rollins because Rollins had a doctor's note stating that Rollins should avoid contact with Plaintiff for a period of time.

On July 13, 2009, Kallao provided Plaintiff with a letter of counseling. [49-1] at 47-48. A letter of counseling informs an employee of behavior that may be grounds for discipline in the future if repeated. It is not considered a formal disciplinary action. Kallao stated in the letter that Plaintiff had acted in an inappropriate and unprofessional manner by refusing to meet with one of her employees for her mid-year appraisal, by failing to fill out the CA-2 form in a timely

manner, and by displaying hostile and rude behavior toward him. Plaintiff denies that she behaved in the manner described by Kallao in the letter.

On August 27, 2009, Plaintiff met with Dr. Fore and requested to be transferred to a non-supervisory role. She followed up with a written request for a transfer. [49-1] at 58. Plaintiff raised the following concerns in her letter:

- My current duties and responsibilities as Supervisor in a stressful, unsupportive environment has resulted in my being placed under doctors care.

- I currently supervise sixteen (16) clerical employees covering the entire MHSL, all with special needs, requiring my assistance with daily follow-up and attention with Human Resources. My supervisory decisions and recommendations are challenged and micro-managed by Mr. Kallao on an ongoing basis.

- This letter of counseling is a form of intimidation and retaliation by Mr. Kallao for my not following his "command." I can no longer function at my highest level and to my fullest potential in a hostile work environment.

- I have been in my current position as Program Support Supervisor for 5 years and have not received a copy of my position description from Mr. Kallao. Because of this my duties and responsibilities have been created as situations come up and I am held accountable and responsible by Mr. Kallao.

[49-1] at 58.

The VA agreed to Plaintiff's transfer request and assigned her a position as a Mental Health Technician with a GS-7 pay grade.

The VA hired Rollins to replace Plaintiff in the role of Program Support Supervisor. Soon after Rollins began her new job, the role of Program Support Supervisor was reclassified as GA-7/9. According to Dr. Fore's undisputed declaration, Rollins received the pay grade increase based on the request that Dr. Fore submitted to HR in late 2008 or early 2009, while Plaintiff still held the position to which Rollins succeeded.

Kallao continued to supervise Plaintiff for the first few months following her transfer. Plaintiff's co-worker, James Dickey, stated in his declaration that he worked with Plaintiff beginning in 2009 to help train her in her new position of Mental Health Technician. [54-1] at 26. Dickey shared an office with Plaintiff and two men at this time. Another woman in the office, who was white and was not a supervisor, had a large office to herself. Dickey observed Plaintiff ask Kallao if she could be moved into the office with the other female. Kallao told Plaintiff no. Dickey also recounted his observation of an "altercation" between Kallao and Plaintiff. However, Plaintiff failed to e-file the relevant page of Dickey's declaration and the Court is aware of it only because the page is included in the courtesy copy delivered to Chambers.[3] On the missing page of his declaration, Dickey states that while Plaintiff and Kallao were in Kallao's office, Kallao "raised his voice to her and stepped close to her in a threating manner." Dickey "stood up to move between them to prevent a physical attack." Kallao was "screaming at [Plaintiff] to 'Look Into My Eyes when I talk to you.'"

In November 2009, Kallao conducted a performance review for Plaintiff for the preceding twelve-month period. Kallao rated Plaintiff as "fully successful" in each category under review and gave her a summary rating describing her overall performance as "fully successful." According to Plaintiff, she did not receive a bonus following this review. Plaintiff asserts that she received bonuses in past years when she had higher ratings. In January 2010, Plaintiff was assigned to a new supervisor.

---

[3] The Court presumes that Defendant has not seen this page of the declaration and has had no opportunity to respond. See L.R. 5.9 ("the Notice of Electronic Filing that is issued through the court's Electronic Case Filing System will constitute service under Fed. R. Civ. P. 5(b)(2)(D)"). Since Defendant is entitled to summary judgment on Count II due to the lack of evidence tying the alleged harassment to Plaintiff's age, gender, or race, the Court finds it unnecessary to order supplemental briefing concerning the alleged altercation between Plaintiff and her supervisor.

Plaintiff filed a complaint with the Department of Veterans Affairs Office of Employment Discrimination. The Department issued a final agency decision on July 19, 2012. Plaintiff then filed suit in this Court. Plaintiff's complaint contains three claims. In Count I, Plaintiff alleges that she was required to work in a hostile environment in violation of Title VII, because Defendant failed to take any step to investigate whether Plaintiff was entitled to a higher rate of pay and harassed Plaintiff when she inquired about a pay increase. In Count II, Plaintiff alleges that that Defendant retaliated against her in violation of Title VII because, after Plaintiff complained about not receiving answers to her questions about a pay increase, Plaintiff's supervisor began subjecting her to harassment and demeaning conduct. In Count III, Plaintiff alleges that Defendant violated the Chicago VA Health Care Promotion Plan Memorandum 05-02-07, dated March 19, 2004 ("VA Promotion Plan Memo"). Plaintiff alleges that the VA Promotion Plan Memo entitled her to an automatic promotion to a GS-7/9 pay grade within 120 days of accepting the Program Support Supervisor position. Plaintiff also alleges in Count III that Defendant committed several personnel practices that are prohibited by the Civil Service Reform Act ("CSRA"). See 5 U.S.C. § 2302.[4] Plaintiff requests compensatory and punitive damages.

## II. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Although intent and credibility are often critical issues in employment discrimination cases, no special summary judgment standard applies to such cases."

---

[4] Plaintiff's complaint does not allege a claim for violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").

*Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013). Rather as with any case, the Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citation omitted).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir.2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III.   Analysis

### A.   Hostile Workplace

"Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013). To avoid summary judgment on her hostile work environment claim, Plaintiff "must provide sufficient evidence to create a genuine issue of material fact as to four elements: (1) the work environment must have been both subjectively and

objectively offensive; (2) her membership in a protected class must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2004) (citing *Milligan v. Bd. of Trs. of S. Ill. Univ.,* 686 F.3d 378, 383 (7th Cir. 2012)).    The Court will focus its analysis on the second element because it is dispositive.

But before turning to the elements, the Court notes that Plaintiff's complaint does *not* allege a claim against Defendant for age discrimination.  Instead, Plaintiff brings hostile work environment and retaliation claims under Title VII, which prohibits employers from discriminating "on the basis of race, color, religion, sex, or national origin." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013).  Title VII does not cover discrimination based on age.  However, "the Seventh Circuit has 'assumed without deciding that plaintiffs may bring a claim of a hostile work environment under the ADEA.'" *Cooksey v. Bd. of Educ. of City of Chicago*, 17 F. Supp. 3d 772, 794 (N.D. Ill. 2014) (quoting *Fugate v. Dolgencorp, LLC,* 555 Fed. App'x 600, 603 n.1 (7th Cir. 2014)).  See also *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001) ("This circuit has assumed, without deciding, that plaintiffs may bring hostile environment claims under the ADEA."  (citing *Halloway v. Milwaukee County*, 180 F.3d 820, 827 (7th Cir.1999)).

To survive summary judgment on an ADEA hostile work environment claim, a plaintiff "must at least identify genuine issues of material fact as to (1) his having been subject to unwelcome harassment, (2) such harassment having been due to his protected status, (3) such harassment having been so severe or pervasive as to alter the conditions of his work environment by creating a hostile or abusive situation and (4) there being a basis for employer liability." *Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 934 (N.D. Ill. 2005).  The Court assumes for

purposes of its analysis that Plaintiff has brought an ADEA hostile work environment claim. It will consider that claim along with the Title VII claim that Plaintiff has properly pled, since the claims include the same basic elements.

Defendant argues that it is entitled to summary judgment on Plaintiff's hostile work environment claim because Plaintiff is "unable to establish any factual nexus to her membership in a protected class." [48] at 9. The Court agrees that Plaintiff has failed to come forward with sufficient evidence that her "membership in a protected class [was] the cause of the harassment" that she allegedly suffered. *Chaib*, 744 F.3d at 985.

"[C]laims concerning abusive or hostile working conditions generally, if unrelated to claims of discrimination, are not actionable under Title VII." *Howard v. Inland SBA Mgmt. Corp.*, 32 F. Supp. 3d 941, 965 (N.D. Ill. 2014). To support a hostile work environment claim, Plaintiff "need not show that the complained-of conduct was explicitly racial" (or, in this case, sexist or ageist), but "must show" that the conduct "had a racial character or purpose" (or sexist or ageist character or purpose). *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). As the Seventh Circuit has explained, "[i]f the workplace is unsavory for any reason other than hostility generated on the basis of" Plaintiff's membership in a protected class, "no federal claim is implicated." *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994). "[P]ersonality conflicts between employees are not the business of the federal courts." *Id.*

In order to support her Title VII claim, Plaintiff "may point to [Kallao's] facially discriminatory remarks" (if any), "as well as any of [his] remarks and behavior that may reasonably be construed as being motivated by [his] hostility to [Plaintiff's] race," gender, or age. *Shanoff v. Illinois Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001).

After reviewing the parties briefs, L.R. 56.1 Statements, and supporting evidence, the Court concludes that Plaintiff "has identified no evidence of a connection between the unfair treatment [s]he claims to have received at the hands of [Kallao] and the fact that [s]he is African-American," a woman, or purportedly older than the woman hired as her replacement. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). As detailed above in the statement of facts (which the Court will not repeat here), Plaintiff has not identified any evidence of facially discriminatory remarks or behavior that Kallao or anyone else directed toward Plaintiff because of her gender, race, or age.[5]

Plaintiff also has not identified any remarks or behavior that, while not overt, could reasonably be construed as being motivated by Plaintiff's gender, race, or age. In her brief, Plaintiff identifies two events that purportedly tie Kallao's harassment to her gender, race, and age, but fails to develop the record concerning either event. First, when Plaintiff asked to be reassigned to a non-supervisory job, her supervisory job was given to Rollins—an African American woman whom Plaintiff asserts in her brief is ten years younger and has lighter skin than Plaintiff—and Rollins received the pay grade increase that Plaintiff had not received. However, there is no evidence in the record concerning Plaintiff's age, Rollins' age, or the difference in age between the two women. Nor is there any evidence in the record concerning the tone of Rollins' skin. Plaintiff's failure to develop the record "prevents [Plaintiff] from using [Rollins] as a comparator" to support her claim that Kallao's harassment was based on Plaintiff's age or color. *Cooksey*, 17 F. Supp. 3d at 795 (school principal could not rely on the fact that the

---

[5] In the introduction to her response brief, Plaintiff refers to one incident that, if it had any support in the record, could be characterized as facially discriminatory. Plaintiff states that Kallao "placed a book about handling Black Women in an offensive way his [sic] desk that could be construed as offensive to a Black woman in plain view," which "made Michelle very uncomfortable." [54] at 3. The Court will not consider this statement because Plaintiff has not provided any evidentiary support for it. *See*, *e.g.*, *Malec,* 191 F.R.D. at 583. Merely asserting facts in a responsive memorandum is insufficient to put issues before the Court. *Midwest Imports*, 71 F.3d at 1313, 1316.

school board replaced him with a "younger principal" as a basis for avoiding summary judgment on his ADEA age discrimination claim, where "the court does not see [the younger principal's] actual age anywhere in the record"). The fact that Rollins received a pay grade increase to GS-7/9 also is not evidence of discrimination based on age or color. The undisputed evidence is that Dr. Fore submitted the request for a pay grade increase shortly after Plaintiff herself asked Dr. Fore about it, and HR approved the request after Plaintiff requested a transfer to a non-supervisory position.

Second, according to the Dickey affidavit, after Plaintiff was transferred to a non-supervisory role in 2009, Kallao refused Plaintiff's request to be moved from the office that she shared with three men to an office that was occupied by one Caucasian woman who was not a supervisor. The fact that there was a Caucasian women in the workplace who had her own office, and was not required to share her office at Plaintiff's request, is not sufficient to raise a triable question of fact concerning whether Kallao's alleged harassment was based on Plaintiff's race. Plaintiff does not provide any evidence concerning whether the Caucasian woman had the same job as Plaintiff, or about the race or jobs of the three men who shared Plaintiff's office. Cf. *Loving v. Lew*, 512 F. App'x 616, 619 (7th Cir. 2013) (the fact that plaintiff in Title VII hostile work environment claim "was the only black employee in her group" was "insufficient to support [an] inference" that her supervisor's "poor treatment of her was racially motivated"); *Yancick*, 653 F.3d at 548 (in § 1981 racially hostile work environment claim, evidence that African-American co-worker bullied white employee's friends, who were white and Hispanic, was insufficient to support an inference that African-American co-worker's alleged harassment of white employee (including dropping a steel coil on him) was motivated by white employee's race).

Finally, Plaintiff's own deposition testimony supports granting summary judgment to Defendant, because Plaintiff (at least in the excerpts of her testimony that were provided to the Court[6]) never suggests that Kallao's harassment was motivated by her age, gender, or race. Specifically, Plaintiff testified that she had "no idea" why Kallao did not process a pay grade change request for her position. [49-1] at 18. Her "complaint against [Kallao] personally" was that he "did not promote [her] like he was supposed to"; he "lowered her evaluation" to a "fully satisfactory" as "soon as [she] went to Dr. Fore to raise the issue [of why she was not] getting promoted"; and he told her she was "going to regret" going to Dr. Fore. *Id.* When asked about the events that occurred at Jesse Brown that, in Plaintiff's view, created a hostile work environment, Plaintiff responded that, starting right after Plaintiff's meeting with Dr. Fore about the pay grade increase, Kallao micro-managed her and "wouldn't let [her] supervise [her] people like [she] wanted to supervise." *Id.* at 22-24. Plaintiff recounted one specific instance during a committee meeting where Kallao tried to "question [her] and undermine [her] in front of other staff as well as management." *Id.* at 23. In short, Plaintiff's own testimony never suggests that Kallao's alleged harassment had anything to do with her age, gender, or race. Instead, her testimony suggests that Kallao began his alleged harassment because Plaintiff went to Kallao's boss to discuss a pay grade increase. Cf. *Blackford v. Fed. Express Corp.*, 80 F. Supp. 3d 809, 816 (N.D. Ill. 2015) (granting summary judgment to defendant on plaintiff's hostile work environment claim where the plaintiff admitted "that he had 'no idea if [his senior manager's alleged] harassment was based on his race'" and instead speculated that "the three incidents were due to his unwillingness to 'bow down'" to the senior manager).

---

[6] Neither party filed a full copy of Plaintiff's deposition transcript with the Court. Defendant filed an excerpted copy, which the Court cites in this opinion. Plaintiff cites to her deposition transcript in her Rule 56.1 Statement, but does not provide the Court with copies of the cited transcript pages.

Taken as a whole, the facts identified by Plaintiff "do not lead to a reasonable inference" that the alleged harassment was motivated by Plaintiff's age, gender, or race. Although the evidence viewed in the light most favorable to Plaintiff shows that Kallao "had a hostile attitude and was at times aggressive" toward Plaintiff, "other than speculation, [Plaintiff] cannot connect [Kallao]'s behavior with * * * animus" toward Plaintiff's membership in a protected class. *Yancick*, 653 F.3d at 546. Therefore, Defendant is entitled to summary judgment on Count II of Plaintiff's complaint. See *Lockhart v. St. Bernard Hosp.*, 538 F. App'x 720, 721 (7th Cir. 2013) (affirming district court's grant of summary judgment to defendant hospital on nurse's hostile work environment claim based on race, where despite proof of "many contentious workplace encounters"—including other nurses insulting and complaining about her, her supervisor failing to stand up for her, and a male nurse physically confronting her—Plaintiff did not show these encounters had "a racial character or purpose").

**B.      Retaliation**

"Title VII forbids an employer from discriminating against an employee who 'opposed any practice' prohibited by Title VII or who 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Milligan*, 686 F.3d at 388 (citing 42 U.S.C. § 2000e-3(a)). This "antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms * * * by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).

To establish a claim for retaliation, "a plaintiff may use the direct or indirect method of proof." *Steinbarth v. Whole Foods Mkt.*, 72 F. Supp. 3d 916, 929 (N.D. Ill. 2014) (citing

(*Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 404 (7th Cir. 2007)). Under either method of proof, the plaintiff is required to establish that "she engaged in statutorily protected activity." *Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003). As the Seventh Circuit has emphasized, "[i]t is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity." *Id.* at 615. That is because Title VII "does not protect employees for opposing all adverse actions by their employers but rather only for opposing certain practices that have been 'made an unlawful employment practice' by federal law." *Gomez v. Fed. Express, Inc*., 72 F. Supp. 3d 902, 908 (N.D. Ill. 2014) (quoting 42 U.S.C. § 2000e-3(a)). "These practices encompass discrimination on the basis of race, color, religion, sex, and national origin." *Id.* (citing 42 U.S.C. § 2000e-2). Thus, in order for an employee to establish a retaliation claim, she must show that she "actually communicated to [her] employer a belief that the employer has engaged in status-based discrimination." *Id.* (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn*., 555 U.S. 271, 276–77 (2009)).

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff's retaliation claim "fails at the outset" because she does not present any evidence that she engaged in statutorily protected activity. *Durkin*, 341 F.3d at 614-15. Plaintiff's response to Defendant's motion for summary judgment never clearly identifies the "statutorily protected conduct" in which Plaintiff allegedly engaged. [54] at 16. Since Plaintiff argues that she "had a good working relationship with Kallao until the request for her promotion" and that later "she received lower performance evaluations and Kallao's treatment of her became abusive" ([54] at 13), the Court presumes that the alleged "statutorily protected conduct" consisted of Plaintiff's complaints to Kallao and Dr. Fore about not receiving a pay grade increase. However, Plaintiff does not offer any evidence or

argument that she told Kallao or Dr. Fore that she thought that she had not received the pay grade increase due to her age, gender, or race. Plaintiff's "complaining in general terms" about Kallao's failure to submit the documentation necessary to increase her pay grade "without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient" to establish that Plaintiff engaged in protected conduct, as required to establish a claim for retaliation under Title VI. *Tomanovic v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). See also *Huang v. Cont'l Cas. Co.*, 754 F.3d 447, 451 (7th Cir. 2014) (Asian-American employee's complaints about favoritism and an objection to his supervisor's saying that the employee was "pissing him off" were not complaints about unlawful discrimination, and thus, did not amount to protected conduct, as required to support employee's Title VII retaliation claim); *Durkin*, 341 F.3d at 615 (female police officer trainee, who was discharged after she failed to pass a firearm test, did not establish that the city fired her in retaliation for engaging in protected activity of complaining about sexual harassment; although trainee complained to city about her experiences at the police academy, the complaints were vague and concerned subject matters other than harassment). Therefore, the Court grants summary judgment to Defendant on Plaintiff's claim for retaliation in violation of Title VII.

### C. VA "Merit Promotion Plan" Memorandum and the Civil Service Reform Act

In Count III of her Complaint, Plaintiff alleges that Defendant violated guidelines set forth in a VA memorandum concerning its Merit Promotion Plan (the "MPP Memo") by not promoting her to a GS-7/9 pay grade within 120 days after she accepted the Program Support Supervisor position. Plaintiff also alleges in Count III that Defendant committed a number of practices that are prohibited under the Civil Service Reform Act ("CSRA"), including among other things taking personnel action as a reprisal for disclosure of information reasonably

believed by the employee to evidence a violation of any law, rule, or regulation and discriminating against a person on the basis of conduct which does not adversely affect that person's job performance. See 5 U.S.C. § 2302.

Defendant contends that it is entitled to summary judgment on Count III for two reasons. First, Defendant argues that Plaintiff is barred from pursuing any claim alleging a violation of the CSRA or the MPP Memo because she failed to exhaust her administrative remedies by filing a complaint with the Merit Systems Protection Board ("MSPB"). Defendant asserts that the MSPB and the Federal Circuit are "solely responsible for interpreting the CSRA," and therefore "an employee who 'wishes to complain of an adverse personnel decision must first appeal to the MSPB.'" [48] at 13 (quoting *Steele v. United States*, 19 F.3d 531, 533 (10th Cir. 1994)). According to Defendant, Plaintiff's claims under the CSRA and the MPP Memo should be dismissed because "[t]here is no evidence that [Plaintiff] ever availed herself of the MSPB procedures required to exhaust her pay-related grievance pertaining to the MPP memorandum." *Id.* Plaintiff's only response to this argument is that she "did not file a CSRA claim, because she did not have access to the executed documents nor did she have the new Job description." [54] at 17.

The Court agrees that Plaintiff has failed to exhaust her administrative remedies on her claim that Defendant committed personnel practices that are prohibited under the CSRA. The CSRA created "a comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions." *Ayrault v. Pena*, 60 F.3d 346, 347 (7th Cir. 1995). The CSRA protects the rights of all federal employees "to be free from 'prohibited personnel practices' taken against them." *Ass'n of Admin. Law Judges v. Colvin*, 2014 WL

789074, at *2 (N.D. Ill. Feb. 26, 2014).[7]  "By creating the CSRA, Congress implicitly repealed the jurisdiction of federal district courts over personnel actions arising out of federal employment."  *Richards v. Kiernan*, 461 F.3d 880, 883 (7th Cir. 2006) (citing *Paige v. Cisneros*, 91 F.3d 40, 43 (7th Cir. 1996)).  This Court has no authority to "supplement the comprehensive procedural and substantive remedies provided to federal employees under the CSRA."  *Id.* at 886.

Defendant correctly states the general rule that, under the CSRA, "[a]n employee who wishes to complain of an adverse personnel decision must first appeal to the MSPB" before filing suit in district court.  *Ayrault*, 60 F.3d at 348.  However, a second procedure for exhaustion is available for "mixed" cases that allege both an adverse personnel decision and a discrimination claim.  As the Supreme Court has explained:

> A federal employee bringing a mixed case may proceed in a variety of ways.  She may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do.  See 5 CFR § 1201.154(a); 29 CFR § 1614.302(b). If the agency decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court. See 5 CFR § 1201.154(b); 29 CFR § 1614.302(d)(1)(i). Alternatively, the employee may initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges. See 5 CFR § 1201.154(a); 29 CFR § 1614.302(b). If the MSPB upholds the personnel action (whether in the first instance or after the agency has done so), the employee again has a choice: She may request additional administrative process, this time with the EEOC, or else she may seek judicial review. See 5 U.S.C. §§ 7702(a)(3), (b); 5 CFR § 1201.161; 29 CFR § 1614.303.

*Kloeckner v. Solis*, 133 S. Ct. 596, 601 (2012).  In other words, an aggrieved federal employee with a "mixed" case "must choose between filing a 'mixed complaint' with his agency's Equal Employment Opportunity office and filing a 'mixed case appeal' directly with the MSPB."  *Westmoreland v. Dep't of Veterans Affairs*, 2001 WL 876230, at *3 (N.D. Ill. Mar. 13, 2001).

---

[7] A "significant change in working conditions" is a "personnel action."  5 U.S.C. 2302(a)(2)(A).

"Either the EEO office or the MSPB can and must address both the discrimination claim and the appealable personnel action." *Id.* (citing 5 U.S.C. § 7702). "[F]ailure to exhaust administrative remedies waives a right to judicial review." *Ayrault*, 60 F.3d at 349. See *also Westmoreland*, 2001 WL 876230 at *4 (VA entitled to summary judgment on plaintiff's ADEA disability discrimination claim on the basis of failure to exhaust administrative remedies, where plaintiff did not raise discrimination claim in appeal to MSPB of adverse employment action, *i.e.* his termination).

Here, Plaintiff has a mixed case because she alleges that Defendant has engaged in adverse employment actions that are prohibited by the CSRA (Count III) and she alleges related Title VII discrimination claims (Counts I and II). As she was allowed to do under the authority just discussed, Plaintiff chose to pursue a complaint with Defendant's EEO office, the Department of Veterans Affairs Office of Employment Discrimination ("VA EEO Office"). The VA EEO Office issued a final decision on Plaintiff's complaint on July 19, 2012 [59]. The decision shows that Plaintiff raised three claims: disparate treatment in violation of Title VII and the ADEA; age discrimination in violation of the ADEA; and hostile environment harassment in violation of Title VII and the ADEA. As Plaintiff concedes, she "did not file a CSRA claim" ([54] at 17)—or, in other words, she did not include a CSRA claim in her complaint to the VA EEO office. Plaintiff has, therefore, failed to exhaust her administrative remedies on her claim that Defendant violated 5 U.S.C. § 2302 by engaging in prohibited personnel practices.

Plaintiff asserts that she did not file a CSRA claim because "she did not have access to the executed documents nor did she have the new Job description." [54] at 17. Although Plaintiff does not make the argument, the Court recognizes that the exhaustion of administrative remedies against a public employer like Defendant is not a jurisdictional requirement, but is a

precondition, like a statute of limitations. *Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000). Therefore, the requirement is subject to equitable estoppel. *Id.* at 994. However, equitable estoppel against the government is disfavored. Unlike in the typical case, a party seeking to invoke equitable estoppel against the government must show that the government has engaged in "affirmative misconduct." *Id.* (government was not equitably estopped from asserting failure to exhaust administrative remedies before the EEOC to bar compensatory damages claim by federal employee, based on failure of employing agency to advise him of his right to seek compensatory damages and his obligation initially to do so; any such omission amounted at most to ordinary negligence, and not affirmative misconduct). Plaintiff does not suggest that there was any affirmative misconduct that prevented her from raising her claims under the CSRA before an appropriate administrative agency. Plaintiff also fails to explain why she could not have brought her claims for violation of 5 U.S.C. § 2302 without her "executed documents" or "new Job description." [54] at 17. It is not entirely clear what documents she is describing; assuming she is referring to the documents that her co-worker allegedly discovered and gave her in late 2008 or early 2009, she had those documents before the alleged harassment occurred and before filing a claim in the VA EEOC Office. In sum, because Plaintiff has failed to exhaust her administrative remedies on her claim that Defendant has violated 5 U.S.C. § 2302 by engaging in prohibited personnel practices, the Court grants Defendant's motion for summary judgment on Count III of Plaintiff's complaint.[8]

---

[8] Defendant also raises a second convincing argument for summary judgment on Count III based on the proposition that the MPP Memo did not entitle Plaintiff to an automatic promotion to the GS-7/9 pay grade. The purpose of the MPP Memo is to "establish policies, procedures and requirements for filling of non-centralized general schedule wage system positions in the competitive service at the VA Chicago Health Care System (VACHCS) based on merit and to identify the best qualified candidates." [10] at 8. Section 7 of the MPP Memo lists "covered personnel actions," in other words, actions that are subject to the MPP Memo's competitive promotion procedures for identifying the best candidates to fill the position. [49-1] at 79-80 (section 7). One "personnel action" that is subject to the competitive promotion

## IV.    Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment [47].  This order resolves all remaining claims in the case.  Judgment will be entered in favor of Defendants and against Plaintiff.

Dated: March 14, 2016

_____
Robert M. Dow, Jr.
United States District Judge

---

procedures is "[t]emporary promotions for more than 120 days and selection for detail for more than 120 days to positions of *higher grade* or higher promotion potential" [49-1] at 80 (section 7(e)) (emphasis added).  By itself, this provision does not entitle Plaintiff to anything; it simply subjects promotions to a "higher grade" for more than 120 days to the MPP Memo's competitive promotion procedures.  Section 8 of the MPP memo lists "exceptions" to competitive promotion procedures. *Id.*  One of the exceptions is that "[e]mployees detailed to a *higher graded position* for a period of more than 30 days must be *temporarily promoted* if they meet the legal and technical requirements." *Id.* (section 8(c); emphasis added).  This provision does not entitle Plaintiff to an automatic promotion, either, because it is undisputed that the Program Support Supervisor position was graded a G-7 and that the position Plaintiff held immediately before accepting the new position was also graded a G-7.  This reading of sections 7(e) and 8(c) is consistent with other provisions of the MPP Memo, which limit an employee's ability to challenge decisions concerning the pay grade assigned to a position.  For instance, section 2(b) makes clear that "[m]anagement * * * retains the right to determine the number of positions to be filled and the grade levels at which positions will be announced or filled." *Id.* at 78.  And section 21(b)(2) provides that an employee's ""[d]issatisfaction concerning the * * * grade level at which positions are * * * filled" cannot be presented as a grievance. *Id.* at 88.

25